# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **WILLIAM CHARLES FREDERICK** | **CIVIL ACTION NO. 6:17-CV-0828** |
| **VS.** | **SECTION P** |
| | **DISTRICT JUDGE** |
| **ST. MARY PARISH LAW ENFORCEMENT CENTER, ET AL** | **MAGISTRATE JUDGE HANNA** |

## MEMORANDUM ORDER

Before the court is the civil rights complaint (42 U.S.C. § 1983) of *pro se* plaintiff, William Charles Frederick, filed *in forma pauperis* on May 4, 2017. Frederick is incarcerated at the St. Mary Parish Jail in Centerville, Louisiana. Plaintiff names St. Mary Parish Law Enforcement Center, Correct Health, Shela, Warden Robyn Landry, Nurse Kera, Sharlen Joseph, Sheriff Mark Hebert and Staff Tulane University Medical as defendants and seeks declaratory and injunctive relief, as well as compensatory damages.

## STATEMENT OF THE CASE

Plaintiff begins his complaint with allegations that on or about November 11, 2016, while a resident of Tiger A Dorm at the St. Mary Parish Jail, he had to sleep on the floor due to overcrowding and his inability to climb to a top bunk, and he was denied a cot or a second mat.

On or about the same date, after eating a Honey Bun, plaintiff began suffering from severe stomach pain and vomiting. A nurse came within ten minutes of the call from fellow detainees of, "Man Down!" After taking his blood pressure and temperature, she determined that he had gas. For the next two days, he tried a soft diet until he could not hold down solids and then started a liquid diet. On November 16, 2016, medical started giving him Malox.

On November 17, 2016, during a period of time that his sickness began to "slack off somewhat," he remembered an earlier visit from his attorney, Tracy Schwab, at which time Mr. Schwab informed him that he had sent him mail related to his case two days prior. He called his sister that evening and asked her to let his attorney know that he never received any mail. Early the next morning, Ms. Sharlen, the "mail lady," delivered mail from his lawyer which he determined had been opened. He believes that the call with his sister was being monitored because mail is usually delivered in the afternoon, never early in the morning. When questioned by another inmate about the letter being open, Ms. Sharlen told him that "the letter came from the courthouse like [he] had received it, and that [his] attorney, Tracy Schwab, should send it to the jail, and not to the courthouse." Minutes later, Lt. Prioux entered the dorm and when asked why the legal mail was opened, Prioux answered, "We open up all mail."

On or about November 29, 2016, plaintiff again began suffering with severe stomach pains and bouts of vomiting. The nurse was called, came to the dorm and "checked" him. Two nights later she ordered a blood test, the results of which plaintiff has never been told.

In the third or fourth week of sickness, plaintiff was moved from general population in Tiger A Dorm (misdemeanor dorm) to Bear D, the most violent felony dorm in the facility. He believes that he was placed in harm's way because of his medical problems and because of the crimes he was alleged to have committed. He asserts that he was supposed to be in medical and protective custody and felt he was placed in Bear D in his weakened state in order to be attacked by DOC inmates.

On February 10, 2017, plaintiff began vomiting agin. He filled out a sick form. On February 12, 2017, he vomited again. He was "overtaken by extreme stomach pains and explosive vomiting." It had been over five days since he had eaten and had not had a bowel movement in a week.

2

Lieutenants Comeaux and Sogniet responded to the call for medical attention and helped him walk to medical, as he was in pain. He asked to be taken to the hospital, but the nurse on duty told him that she did not have the authority to do so and he was sent back to the dorm. Later that night he began vomiting again and, by midnight, he was so weak that he could not get off the floor.

On February 13, 2017, he submitted a grievance, complaining that he was not taken to the hospital.

On February 15, 2017, he was served chicken for lunch between 2:30-3:00 p.m. He tried to eat, as he had not done so in a week, but got very sick. Once again, he called for medical and Lieutenants Comeaux and Sogniet took him via wheelchair to medical at which time the nurse sent him to the hospital. Lieutenant Sogniet took him by patrol car to Franklin Foundation Hospital. He had to walk from the parking lot to the hospital, approximately 50 yards, because Sogniet could not leave him alone to go and get a wheelchair.

At the hospital, the doctor ordered a cat scan and, upon seeing the results, rushed him to University Medical Center. On February 16, 2017, he was seen by a team of doctors and nurses who diagnosed him with "pancreatitis, yellow menginus, dehydration, stopped up gallbladder, and an acute blood infection." Plaintiff's urine was black because his bowels were backed up into his bladder and he was allegedly told that without treatment, he would have died in two more days. A stint was placed into his pancreas and gallbladder to decrease the swelling and drain the bowels.

On February 21, 2017, plaintiff alleges that he was given morphine and insulin against his will. He claims that he only wanted morphine if he needed it for pain, but felt at that time that the pain pills were controlling his pain. Moreover, he did not want to become dependent on insulin shots to control his sugar. He alleges that the nurse told him that she was flushing his port with

3

saline, yet she actually flushed the port with saline, administered morphine through the IV, then flushed with saline again. When he told her that he did not want morphine or insulin, she laughed.

On February 23, 2017, he was prescribed larger bags of antibiotics and taken back to St. Mary Parish Law Enforcement Center. He was placed on a single mat directly on the floor of a cell in booking. Over the next 8 days, he was administered 16 bags of antibiotics, one bag twice a day.

On March 27, 2017, he was informed by Lt. Clark that he was having surgery on that day to remove the stints. However, during surgery at University Medical Center, his gallbladder was removed. Less than an hour after surgery, he was transferred back to jail. On the trip back to the hospital, he alleges that he passed out twice due to pain. He does not feel that he should have left the hospital so soon after surgery.

Upon arriving back at the jail, he was brought to medical and offered ibuprofen for the pain instead of the pain medication suggested by the doctors at the hospital. Nurses Kera and Shela told him that they could not give him the prescription pain medication. On that same day, he was placed in segregation. He was provided one 2" thick mat and, despite his request due to his recent surgery and a previous broken hip, he was denied a request for a second mat. Three days later he was given a second mat.

On March 29, 2017, plaintiff told Nurse Lawrance that the food was hurting his stomach so badly that he could not eat. She told him to stop eating if it caused him pain; he did.

On April 4, 2017, plaintiff sneezed and popped an incision on his stomach. He was taken to medical and spoke with a doctor via television screen who told him to come back to medical if it happened again and to remain on a soft diet. Plaintiff alleges that until that point, he had not been given a soft diet prescribed by medical. On April 5, 2017, he sneezed again and was taken to

4

medical. Plaintiff complains that Nurse Shela was confrontational towards him and that after telling her why he was there, she answered, "If it's not busted and bleeding all over, I'm not worried about it." She said she would have a talk with Lt. Comeaux, who brought him to medical, about bringing people to medical just because they want to go. He asserts that she did not treat him and sent him back to segregation.

On or about April 1 or April 2, Nurse Shela told plaintiff that he needed to get some exercise to prevent blood clots. He did as instructed. On April 5, he was in pain due to the walking and stretching. He told Shela that he had overdone it and could not get up off of the floor to get his medication and she told the guard, "I'm not messing with him," and left without giving him medication for the pain. It took him 30 minutes to get to the intercom to call for help. Lt. Oubre was on duty when he called and told plaintiff that he would have Nurse Shela bring him pain medication. She refused to do so.

He also complains of receiving opened legal mail again on June 11, 2017.

Plaintiff seeks the following relief in his original complaint:

1. A declaratory judgment stating any criminal or civil violations by any involved parties against plaintiff;

2. Other declaratory judgments as it may appear duly founded;

3. Injunction ordering all parties to:

    a. Arrange for proper payment for any medical procedures, prescriptions, examinations, tests, treatments, etc. resulting from injury, sickness or suffering due to neglect or indifference toward plaintiff's welfare;

    b. Arrange for evaluation of plaintiff's medical needs including: (1) prescription

medications; (2) bedding requirements; (3) physical therapy; (4) convalescence; (5) mental health requirements due to pain and suffering/PTSD, etc., by an independent doctor or medical facility;

 c. Provide suggested treatments as stated in section (b) above;

 d. Provide proper comfort and protections as required by due process and law concerning plaintiff's pretrial detainment and injuries;

 e. Issue such other injunctions provided by law;

4. Issue indictments concerning any criminal findings regarding this case;

5. Award compensatory damages against all defendants found to be liable;

6. Award nominal damage against all defendants found to be liable;

7. Award punitive damages against all defendants found to be liable; and

8. Grant awards or other such relief to which plaintiff is entitled.

On December 5, 2017, plaintiff filed an amended complaint. He complains of an August 16, 2017, incident in which Lt. Sharlen Joseph, the mail lady, confronted him about a grievance he wrote regarding his legal mail from the Middle District. Captain Green told him not to raise his voice at the staff. Captain Green told him, "I will open all the mail to make shore (sic) contraband stays out of the jail." [Rec. Doc. 15]

<b><u>LAW AND ANALYSIS</u></b>

***1. Rule 8 Considerations***

Rule 8 of the Federal Rules of Civil Procedure does not require explicit detail, but it does require a plaintiff to allege specific facts which support the conclusion that his constitutional rights were violated by each person who is named as defendant**.** This conclusion must be supported by specific factual allegations stating the following:

(1) the name(s) of <u>each</u> person who allegedly violated plaintiff's constitutional rights;

(2) a description of what actually occurred or what <u>each</u> defendant did to violate plaintiff's rights;

(3) the place and date(s) that <u>each</u> event occurred; and

(4) a description of the alleged injury sustained as a result of the alleged violation.

## *2. Supervisory Officials*

Plaintiff is hereby advised: "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983). In other words, to the extent that plaintiff seeks to name supervisory officials, Sheriff Mark Hebert and Warden Robyn Landry, as defendants, he must allege facts sufficient to demonstrate either <u>personal involvement</u> or the implementation of unconstitutional policies by the each of them.

## *3. Juridical Person*

Plaintiff has sued the St. Mary Parish Law Enforcement Center and the Correct Health Medical Center. Fed.R.Civ.P. Rule 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs

whether these entities have the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24. The SMPLEC is not a juridical person and therefore, plaintiff's claims against it must be dismissed as frivolous. Plaintiff should amend to provide facts to establish that Correct Health Medical Center is a juridical person, and WHAT specifically this defendant did to violate plaintiff's constitutional rights, and that it acted under color of law, conspired with a state actor, or exercised powers that were traditionally the exclusive prerogative of the state, as discussed in more detail in Section 3, below.

### 3. *State Actor*

Plaintiff also brings claims under § 1983 against the staff at Tulane University Medical. In some circumstances, a private party may be acting "under color of state law" and held liable under § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989). A private party can be held to be a state actor under only three circumstances, (1) where there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the party may be fairly treated as that of the state itself, (2) where the private party has exercised powers that are "traditionally the exclusive prerogative of the state," or (3) where the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the action of the private party must in law be deemed to be that of the state. *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1981)*; see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974).

Here, plaintiff has sued the staff at a private hospital and what appears to be a private medical group, Correct Health, under § 1983. He should amend to allege facts to support a finding that they acted under color of law, conspired with a state actor, or exercised powers that were traditionally the exclusive prerogative of the state.

*4. Medical Care Claims*

As a pre-trial detainee, plaintiff's constitutional rights flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996). When a pretrial detainee brings medical care claims which are directed toward particular incidents, these events are properly analyzed as episodic acts, and the deliberate indifference standard is applied. *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir.1996). This standard is substantially equivalent to the Eighth Amendment protections available to a convicted prisoner. *Id.* To state a cause of action, this plaintiff needs to show deliberate indifference on the part of each of the defendants. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Id.*

Thus, in order to establish an actionable constitutional violation plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the plaintiff to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious

9

medical needs.'" *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifference standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then disregarded an excessive risk of injury to him, and, that they were both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they drew that inference. *Id.* at 837.

Plaintiff should amend his complaint to provide the following:

1. The specific injuries and the harm sustained as a result of the defendants' fault;

2. The type of treatment he should have been given, but was not;

3. The type of treatment he alleges that he is entitled to receive;

4. Copies of grievance forms/request forms/sick call request sent to prison officials;

5. Copies of any correspondence received from prison doctor or nurse;

6. If unable to provide copies of request forms/grievance forms/sick call request/correspondence, please provide date each was sent, name of prison official it was sent to and description of contents;

7. If unable to provide copies of correspondence received from prison doctor or nurse, please provide date each was received, from whom it was received and description of contents;

8. Facts to establish deliberate indifference on the part of Nurse Shela;

9. Facts to establish deliberate indifference on the part of Nurse Kera;

10

10. Facts to establish either personal involvement or the implementation of unconstitutional policies by Warden Robyn Landry;

11. Facts to establish either personal involvement or the implementation of unconstitutional policies by Sheriff Mark Hebert;

12. The specific medication plaintiff was prescribed, name the prescribing physician, the date and place it was prescribed and the reason why it was prescribed;

13. Individuals who denied plaintiff these medications and their reasons for denying same;

14. Facts to establish that prison officials knew of the medical conditions with which plaintiff was ultimately diagnosed, and failed to treat him for same; and

15. Injury plaintiff sustained as a result of a denial or delay in medical care.

Before this court determines the proper disposition of plaintiff's claims, plaintiff should be given the opportunity to remedy the deficiencies of his complaint. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

**THE CLERK IS DIRECTED** to serve the plaintiff with a copy of this Order.

**IT IS ORDERED** that plaintiff amend his complaint within thirty (30) days of the filing of this order to cure the deficiencies as outlined above, and alternatively, dismiss those claims plaintiff is unable to cure through amendment. Specifically, but not exclusively, plaintiff shall precisely state what each named defendant did to violate plaintiff's constitutional rights with respect to each separate incident alleged

**Failure to comply with this order may result in dismissal of this action as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) or under Rule 41(b) or 16(f) of the Federal Rules of Civil Procedure. Plaintiff is further required to notify the Court of any change in his address under U.L.R. 41.3W.**

**THUS DONE AND SIGNED** in Chambers at Lafayette, Louisiana, this 13th day of December, 2017.

                                              **PATRICK J. HANNA**
                                **UNITED STATES MAGISTRATE JUDGE**