UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| WILLIAM CHARLES FREDERICK #730193 | CASE NO. 6:17-CV-00828 SEC P |
| VERSUS | JUDGE MICHAEL J. JUNEAU |
| ST. MARY PARISH LAW ENFORCEMENT CENTER, ET AL | MAGISTRATE JUDGE WHITEHURST |

### REPORT AND RECOMMENDATION

Pro se plaintiff William Charles Frederick, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on May 4, 2017, in the United States District Court for the Middle District of Louisiana. Doc. 1. On June 28, 2017, the matter was transferred to this Court. Doc. 5. Frederick filed an amended complaint on July 28, 2017 (doc. 9) and on December 5, 2017 (doc. 15). Following an initial review, plaintiff was ordered to amend his complaint on December 13, 2017, to address deficiencies outlined by the Court (doc. 16), which he did on January 8, 2018 (doc. 17) and March 19, 2018 (doc. 20).

Frederick names the following as defendants in this matter: St. Mary Parish Law Enforcement Center, Correct Health, Shela, Warden Robyn Landry, Nurse Kera, Sharlen Joseph, Sheriff Mark Hebert, Staff Tulane Medical University Medical, Capt Green and Warden Dadabar.

On October 21, 2019, the Court held a *Spears* hearing, pursuant to which plaintiff participated via telephone. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds, Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

I. **Background**

The crux of Frederick's claims in this matter relate to a medical situation involving his gallbladder and pancreas that occurred while he was incarcerated at the St. Mary Parish Law Enforcement Center. Plaintiff began suffering with severe stomach pains and bouts of vomiting in November 2016. Doc. 9, p. 6. A blood test was ordered on or about December 1, 2016; plaintiff was never given the results. Id. He continued to feel sick and, according to plaintiff's testimony at the *Spears* hearing, he requested another medical visit on February 10, 2017, when he began vomiting, and he was seen on February 12, 2017. He told Nurse Kera that he had been throwing up for a few days and could not hold down food and asked to be taken to the hospital. Nurse Kera told him that she did not have the authority to send him to the hospital and told him that he was experiencing gas pains. Plaintiff returned to medical on February 15, 2017, at which time he had to be taken by wheelchair due to his severe pain. At this time, he was taken to Franklin Foundation Hospital, via

car. Following an x-ray at Franklin Foundation, he was rushed via ambulance to Tulane Medical Center in New Orleans. He claims that he had pancreatitis, yellow meningitis, a stopped-up gallbladder, a blood infection, was severely dehydrated and was told that he may have died two days later without medical attention.

His gallbladder was removed in March 2017. He claims that the "moment [he] woke up in recovery, before anesthesia wore off they were trying to get [him] up to get dressed for the trip back to SMPLEC. [He] could barely move due to the pain and the anesthesia made getting dressed before difficult." Doc. 9, p. 9. Less than an hour after waking up from surgery, he was being taken back to SMPLEC. *Id*. He claims that despite passing out from the pain twice on the ride home, he was only given Ibuprofen or Tylenol for pain once back at the jail, instead of the pain medication prescribed by doctors at the hospital. *Id*. at p. 10.

His claims against the Tulane Medical Center staff are that they gave him morphine as a pain medication, even though he told them he did not need it or want it.

Plaintiff alleges that Nurse Shela refused to give him medical attention following his surgery. She gave him Ibuprofen instead of the pain medication prescribed by the physician at the hospital. While he was supposed to move around to avoid blood clots, because he was not given the pain medication, he was in too much pain to get out of bed. He claims that he ended up with a knot on his tailbone

because he could not turn from one side to the other or get up. In the *Spears* hearing, Plaintiff specifically alleged that Nurse Shela said she wasn't "messing with him" and left him with nothing for pain. He testified as to a specific incident in which he sneezed and popped something inside of his stomach. A male nurse sent him to the medical center where Nurse Shela told him to go back to his cell and told the deputies who brought him that she "ain't going to do nothing for him," and scolded them for bringing him there "for no reason."

Frederick also brings claims against SMPLEC staff for issues unrelated to medical care. His claims against Sharlen Joseph arise out of the allegation that she was opening his incoming legal mail.

Plaintiff makes three separate claims against Captain Green. First, he alleges that Green knew Plaintiff had a conflict with another inmate yet refused to move the inmate to another dorm. Next, he claims that Green knew that Sharlen Joseph confronted him about a grievance regarding his legal mail being opened, yet the only action he took was to threaten to put him in segregation. Finally, he claims that following his surgery, when the St. Mary Parish Law Enforcement Center was under a DOC inspection, Captain Green did not want any boats on the floor, so he refused to provide a boat or a bunk to Plaintiff for sleeping until the inspection was complete. Plaintiff slept on a single mat on the floor for six days.

Plaintiff's claims against Warden Robyn Landry arise out of the Warden's knowledge that Plaintiff's legal mail was allegedly being opened, that he was brought back to the facility and placed in segregation immediately after his surgery, that Plaintiff was sent to the hospital by car instead of ambulance, and that he was not allowed to have his pain medication from the doctor while he was in segregation.

He also testified in the *Spears* hearing that he is not alleging personal involvement on the part of Sheriff Mark Hebert; rather, his claims arise because Hebert is over the facility, as is the warden.

Finally, according to Plaintiff's testimony in the *Spears* hearing, while Warden Dadabar was named as a defendant in this suit, he is not making any allegations against him. Rather, Dadabar was a witness to some of the events.

## II.   Law and Analysis

### A. Frivolity Review

Frederick has been granted leave to proceed *in forma pauperis* in this matter. Accordingly, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2), which provides for *sua sponte* dismissal of the complaint or any portion thereof if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept the plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley v. Puckett*, 157 F.3d at 1025 (failure to state a claim).

### B. Section 1983

Federal law provides a cause of action against any person who, under the color of state law, acts to deprive another of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. In order to hold the defendant liable, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of federal law; that is, that the defendant was a government actor. *See West v. Atkins*, 108 S. Ct. 2250, 2254–55 (1988).

### C. Defendants

#### 1. Sheriff Mark Hebert and Warden Robyn Landry

Plaintiff clarified at the *Spears* hearing that Hebert and Landry did not have any personal involvement in the claims he alleges; rather, they are only named in their supervisory capacities. Plaintiff is hereby advised: "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897 (1983). In other words, to the extent that plaintiff seeks to name supervisory officials as defendants, he must allege facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by that defendant. Because Frederick does not allege personal involvement on the part of Hebert or Landry in this suit, he is unable to state a claim against them and all claims against Mark Hebert and Robyn Landry should be dismissed.

### 2. St. Mary Parish Law Enforcement Center

Plaintiff has sued the St. Mary Parish Law Enforcement Center. Federal Rule of Civil Procedure 17(b) provides that the "capacity to sue or be sued shall be

7

determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether St. Mary Parish Law Enforcement Center has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code Ann. art. 24. The St. Mary Parish Law Enforcement Center is not a juridical person and therefore, plaintiff's claims against it must be dismissed.

### 3. Sharlen Joseph

Frederick complains that Sharlen Joseph opened his incoming mail. In the *Spears* hearing, he conceded that he was not alleging that he was denied access to the courts or that prison officials took anything out of his mail, only that they opened his incoming mail in outside of his presence. It is well-recognized that inmates have a First Amendment right both to send and receive mail, *see Thornburgh v. Abbott*, 490 U.S. 401 (1989), but it is clear that this right does not preclude prison officials from examining mail to ensure that it does not contain contraband or address matters, such as escape plans or other illegal activity, that may impact upon the security of the prison environment. *See Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). Thus, it is well-settled that a prisoner does not have a constitutional right to complain if his incoming mail is opened and inspected outside of his presence, even if the

8

inspection is in violation of prison rules or regulations, and this rule applies to both legal and personal mail. *See id.* at 825 (recognizing that "the violation of a prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights"). *See also Singletary v. Stalder*, 273 F.3d 1108 (5th Cir. 2001) (affirming that "prisoners do not have a constitutional right to be present when privileged legal mail is opened and inspected").

Accordingly, Frederick has failed to state a claim against Sharlen Joseph upon which relief can be granted.

### 4. Staff Tulane University Medical Center

Plaintiff's claim that medical staff at Tulane University Medical Center gave him morphine despite his Plaintiff telling them he did not want or need it. Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Accordingly, this Court finds that the deliberate indifference claim against the staff at Tulane University Medical Center is frivolous or fails to state a claim upon which relief may be granted.

### 5. Warden Dadabar

While a named defendant, Plaintiff clarified in the *Spears* hearing that he did not intend to bring any claims against Warden Dadabar. Therefore, Dadabar should be dismissed from this suit.

### 6. Captain Green

Plaintiff makes three separate claims against Captain Green. With respect to the allegation that Green knew Plaintiff had a conflict with another inmate yet refused to move the inmate to another dorm, Plaintiff has failed to state a claim upon which relief can be granted. While Plaintiff contends that Green knew another inmate, Joseph Stansburg, was causing problems, he makes no allegation that there was ever any incident involving him, much less that he actually sustained any injury. Section 1997e(e) prohibits recovery of the damages Plaintiff seeks absent a physical injury. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999).

Next, he claims that Green knew that Sharlen Joseph confronted him about a grievance regarding his legal mail being opened, yet the only action he took was to threaten to put him in segregation. Plaintiff has failed to state a claim upon which relief may be granted with respect to this allegation against Green.

Finally, he claims that following his surgery, when the St. Mary Parish Law Enforcement Center was under a DOC inspection, Captain Green did not want any boats on the floor, so he refused to provide a boat or a bunk to Plaintiff for sleeping

until the inspection was complete. Plaintiff slept on a single mat on the floor for six days. This claim will be addressed in a separate Order.

## *Conclusion*

Therefore,

**IT IS RECOMMENDED** that all claims against defendants St. Mary Parish Law Enforcement Center, Sheriff Mark Landry, Robyn Landry, Staff Tulane University Medical, Sharlen Joseph, and Warden Dadabar be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim on which relief can be granted, under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) [1].

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against Captain Green for knowing Plaintiff had a conflict with another inmate yet refusing to move the inmate to another dorm, and for knowing about Plaintiff's complaints against Sharlen Joseph regarding mail, be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim on which relief can be granted, under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of

---

[1] Plaintiff's claims against the remaining defendants, Correct Health, Nurse Shela, Nurse Kera and claims for failure of Captain Green to provide medical care, will be addressed in a separate Order.

Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See, *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE in Chambers on this 20th day of February, 2020.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE